CAP ANDREW TILLES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86505. Promulgated September 16, 1938.

*Robert E. Moloney, Esq.*, for the petitioner.
*Loren P. Oakes, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding involves deficiencies in petitioner's income tax for the years 1931 and 1932 in the respective amounts of $3,406.53 and $2,983.99. Petitioner alleges that respondent erred:

(1) In disallowing the deduction of losses of $24,305 in 1931 and $29,108.50 in 1932 upon the sale of certain shares of stock in those years.

(2) In increasing gross income for each of the years 1931 and 1932 by the amount of $4,800 representing dividends paid in those years on shares of stock which petitioner had pledged as security for payments to his divorced wife.

(3) In disallowing the deduction of office and business expenses of $4,696.49 in 1931 and $4,427.93 in 1932.

(4) In disallowing the deduction of $200 in 1932 representing contributions to a fund being raised to provide a musical education for a girl who did not have sufficient means of her own.

Each of these issues will be discussed separately and in the order indicated.

*Issue 1.*—The petitioner is a resident of St. Louis, Missouri, and is a man of considerable wealth. He is unmarried at the present time, having been divorced from his former wife in 1909. He has no children.

In December 1931 petitioner decided to sell to his nephew, Cap A. Lick, Jr., certain securities, which at that time had a value considerably less than their cost. He consulted with the revenue agent in charge at St. Louis about the deductibility of the losses on such sales for income tax purposes and was advised that the sales could be made directly to the nephew, provided they were bona fide sales. Accordingly, on December 16, 1931, petitioner transferred to Cap A. Lick, Jr., the following shares of stock, the cost of which to the petitioner and the agreed selling price to his nephew were as shown:

| Stock | Number of shares | Cost | Selling price |
|---|---|---|---|
| Colorado Fuel & Iron Co. | 400 | $11,260 | $3,000 |
| Chicago, Rock Island & Pacific Ry. Co., 7% preferred | 100 | 10,625 | 1,850 |
| St. Louis-San Francisco Ry. Co., preferred | 100 | 7,820 | 550 |
| | 600 | 29,705 | 5,400 |

On the same date, December 16, 1931, Cap A. Lick, Jr., gave the petitioner his check for $5,400, drawn on his personal account at the Mississippi Valley Trust Co., in payment for the above listed securities. The check was either cashed by the petitioner or deposited to his credit.

Also, in December 1932, the petitioner under similar circumstances sold to another nephew, George Tilles, Jr., 100 shares of Illinois Central Railroad Co. stock, which had cost him $10,300, for $937.50, and 100 shares of Chicago, Rock Island & Pacific Railway Co. 7 percent preferred stock, which had cost him $10,775, for $450. In payment for those shares George Tilles, Jr., gave petitioner his personal check for $1,387.50, drawn on his account at the Mississippi Valley Trust Co.

All of the above sales were made at the prevailing market price of the shares sold. They were all regular in form and there was a completed transfer of the shares from petitioner to his nephews.

Respondent has disallowed the deduction of the losses claimed by the petitioner on the sales in question on the ground that they were not bona fide sales but were gifts of the securities to the nephews.

It was established on the testimony of petitioner and his nephews that petitioner previously had made them large gifts of securities, amounting, in the case of Cap A. Lick, Jr., to $250,000 or $350,000, and in the case of George Tilles, Jr., to about $60,000. There was an agreement that petitioner was to receive payment for some of these securities out of the dividends on them or the profit on their sale. Petitioner made a cash deposit of $2,000 to the account of George Tilles, Jr., at the Mississippi Valley Trust Co. at about the time the securities were sold to him on December 27, 1932.

The evidence also establishes that petitioner managed his nephews' business affairs to a great extent. He held powers of attorney from both of them, which authorized him to draw funds from their bank accounts and to buy and sell securities for them. Petitioner had access to the safe deposit box at the Mississippi Valley Trust Co. in which the securities belonging to both of his nephews were kept.

We do not think that these circumstances invalidate the sales. There was a clear intention on the petitioner's part to sell the securities in question and his nephews agreed to purchase them at their market value. All of the formalities of a sale were complied with in each instance. The securities were properly transferred to the nephews and thereafter at all times were considered their property. They paid the petitioner for them with their own funds. The fact that petitioner may have given his nephews some or all of the money with which the purchases were made does not defeat the sales so long as the gifts were free and unencumbered and the money belonged to the nephews to do with as they pleased. Cf. *Commissioner* v. *Behan*, 90 Fed. (2d) 610, affirming 32 B. T. A. 1088; *Joseph Blumenthal*, 30 B. T. A. 125; *Madeira* v. *Commissioner*, 98 Fed. (2d) 556, reversing *Percy C. Madeira*, 36 B. T. A. 456; *Arthur B. Hyman*, 36 B. T. A. 202; *Nathan R. Allen*, 38 B. T. A. 160.

The sales were admittedly for the purpose of reducing income tax liability but this in itself does not invalidate an otherwise valid transaction. *Gregory* v. *Helvering*, 293 U. S. 465.

Upon consideration of all the evidence, the Board finds as a fact that the sales to the nephews were actual, bona fide sales, from which it follows that the petitioner is entitled to deduct the losses claimed.

*Issue 2.*—In each of the years 1931 and 1932 the respondent increased petitioner's reported net income by the amount of $4,800 representing payments made during those years to petitioner's divorced wife out of dividends on shares, of stock which petitioner had deposited with the bank to secure such payments.

Petitioner obtained an absolute divorce from his wife, Corinne L. Tilles, June 10, 1909. It is stipulated that the divorce was obtained "for the fault of the said Corrine L. Tilles." The decree of the court granting the divorce reads in part as follows:

Now at this day [June 10, 1909] the Court * * * being satisfied that the plaintiff is an innocent and injured party and entitled to the relief prayed for in his petition, doth order, adjudge and decree that he be absolutely and forever divorced from the bonds of matrimony existing between plaintiff and said defendant, * * * and that the defendant pay the costs of this proceeding * * *

Petitioner's former wife remarried within a week after the divorce was granted.

On May 12, 1909, petitioner and his wife entered into a predivorce agreement under which petitioner agreed to pay his wife $400 a month for life "in lieu and stead of permitting any judgment or decree for alimony against me" and to pledge certain shares of stock of a par value of over $100,000 to insure such payments. The agreement contains the following concluding paragraph:

I make this proposition and agreement solely in consideration of my marital duty, and to adjust any matter of alimony, and prevent the consideration of said matter of alimony by the Court in which my suit is pending, in case it should hold I am entitled to a decree for divorce.

The securities in question were deposited with the Mississippi Valley Trust Co. of St. Louis, with a letter of instruction and a copy of the agreement of May 12, 1909. In each year since 1909 the petitioner has paid to his former wife $4,800 in accordance with the agreement.

In entering into the predivorce agreement and as part consideration therefor petitioner's wife waived her rights to certain securities of an undisclosed value which petitioner had given to her from time to time during their married life and which at the time of her separation were in his possession.

The Commissioner ruled in 1928 with respect to some of the prior years that the income from the securities held by the Mississippi Valley Trust Co. under the agreement of May 12, 1909, was not taxable to the petitioner. In determining the deficiencies for the years involved in this proceeding, however, the respondent has reversed his prior ruling and has included all the dividends from such securities in petitioner's taxable income.

We are of opinion that this issue is controlled by the decision of the Supreme Court in *Douglas* v. *Willcuts*, 296 U. S. 1, in which it

was held that the payments made by a taxpayer to his divorced wife in lieu of alimony were made in satisfaction of his legal obligation and were includable in his taxable income. See also *Helvering* v. *Brooks*, 82 Fed. (2d) 173; *Helvering* v. *Coxey*, 297 U. S. 694; *Helvering* v. *Stokes*, 296 U. S. 665; *Albert C. Whitaker*, 33 B. T. A. 865.

One of the cases relied upon by petitioner is *Edward T. Hall*, 36 B. T. A. 398. That case turns upon the fact that there was no legal obligation on the part of the taxpayer to support his wife or to pay her alimony in the years when the payments in dispute were made. To the same effect is *Henry Oliver Rea*, 35 B. T. A. 1132; *Harry S. Blumenthal*, 34 B. T. A. 994. We do not think that those cases are controlling here. Apparently petitioner was legally obligated to make the payments of $4,800 per year to his wife as agreed upon in the predivorce agreement of May 12, 1909. It was pointed out in the *Hall* case that there was no property jointly owned by the spouse and that the wife had no property of her own which was retained by the husband after separation. In the instant case, however, petitioner's wife did own certain securities which the petitioner retained and in which the wife waived her property rights in consideration for the payments which she was to receive under the separation agreement. There was, therefore, a continuing obligation on the part of the petitioner to make the payments to her even after her remarriage.

*Issue 3.*—It is stipulated with respect to this issue that for 1931 and 1932 business and farm expenses shall be allowed in the respective aggregate amounts of $3,130.99 and $2,951.95, and disallowed in the respective aggregate amounts of $1,565.49 and $1,475.98.

*Issue 4.*—In 1932 petitioner made a donation of $200 to a fund to provide a musical education for a young girl, Anna Poe, who was said to have a very promising voice. Anna Poe was then clerking in a department store and had no means of her own with which to provide a musical education. Similar contributions were made to the fund by other parties.

With respect to this contribution the petitioner testified as follows:

She [the child's music teacher] was interested in a young girl that wanted a musical education. She had a wonderful voice, and she had several different people contributing so much to the support of that girl to send her to New York for a musical education. She was a poor girl and had no means of support. She was a clerk in a department store. I helped her in her education through Mrs. Baer [the music teacher].

Section 23 (n) of the Revenue Act of 1932 provides in part that:

(n) CHARITABLE AND OTHER CONTRIBUTIONS.—In the case of an individual, contributions or gifts made within the taxable year to or for the use of:

\*          \*          \*          \*          \*          \*          \*

(2) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

The above quoted provision of the statute is substantially the same as the provision of the Revenue Act of 1921 and all intervening revenue acts. The Revenue Act of 1918 permitted the deduction from gross income, not in excess of 15 percent of the taxpayer's net income, of:

Contributions or gifts made within the taxable year to corporations organized and operated exclusively for religious, charitable, scientific, or educational pur‚ poses, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual * * * [§ 214 (a) (11)].

The only explanation contained in the Committee Reports of Congress on the revenue bill which later became the Revenue Act of 1921 is the following from the Ways and Means Committee Report No. 350, 67th Congress, 1st Session:

Section 215 would allow the deduction, under proper restriction, of contributions or gifts to a community chest fund or foundation.

The statutes and the provision above referred to in the various acts are clearly *in pari materia*. Quite clearly the contribution here in question could not be deducted under the provisions of the Revenue Act of 1918. We do not think that it was the intention of Congress by the use of the language contained in the Revenue Act of 1921, and succeeding revenue acts, to allow the deduction from gross income of a charitable gift which was for the benefit of only one person. The facts are simply that the child's music teacher thought that her pupil had a promising voice and was interested in having her receive a musical education. She solicited several of her friends for gifts to enable her to defray the child's expenses for a musical education.

In *James Sprunt Benevolent Trust,* 20 B. T. A. 19, the Board held that the petitioner was not organized exclusively for religious, charitable, scientific, literary, or educational purposes and was not exempt from taxation under section 231 of the Revenue Act of 1921. The trust was created for the purpose of giving temporal support to "a son or grandson or a blood relation who will be called to the Gospel Ministry of the Southern Presbyterian Church." The Board stated:

* * * The authorities, which we have reviewed at length, seem unanimously to agree that purposes such as these are not public charities in a legal sense and are not entitled to the privileges, such as exemption from taxation, generally accorded such charities. "A gift for 'the support of those of my children and their descendants who may be destitute,' is not a charity." Perry

on Trusts and Trustees, vol. 2, p. 1163. "* * * Charity is generally defined as a gift for public use. Such is its legal meaning. * * *" *Kain* v. *Giboney*, 101 U. S. 362. "* * * A charity is a gift to a general public use, which extends to the rich, as well as to the poor. * * *" *Perin* v. *Carey*, 24 How. 465.

In *Havemeyer* v. *Commissioner*, 98 Fed. (2d) 706, reversing 36 B. T. A. 859, it was held that contributions to the United Special Aid Association, an unincorporated association, were deductible from gross income. The association was organized by a small group of individuals and the contributions were disbursed largely, though not entirely, to needy and worthy old family retainers. The court overruled the contention that the organization merely served as a means for the bestowal of private bounties. The fact that the beneficiaries were all personally known to one or more of the members and were persons who might have been given aid if the association had not existed does not change the character of the association. The Board has carefully considered the opinion of the court in that case but is of the opinion that the facts there are substantially different from those which obtain in this proceeding. The action of the respondent in disallowing the deduction of the $200 gift is approved.

*Judgment will be entered under Rule 50.*