LARRY A. MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 6127-73.
United States Tax Court
T.C. Memo 1975-279; 1975 Tax Ct. Memo LEXIS 95; 34 T.C.M. (CCH) 1207; T.C.M. (RIA) 750279; September 4, 1975, Filed Jay Fred Cohen, for the petitioner. Robert B. Perry, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1971 in the amount of $149. The issue for decision is whether petitioner is entitled to deduct as a charitable contribution under section 170, I.R.C. 1954, [1] various expenses incurred in connection with his activities as a member and cadet officer of the Civil Air Patrol. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, who resided in Baltimore, Maryland at the time his petition in this case was filed, was an unmarried individual in 1971. He filed his Federal income tax return for the calendar year 1971 with the District Director of Internal Revenue at Baltimore, Maryland. Petitioner, *98 who was 18 years old in 1971, had joined the Civil Air Patrol in September, 1964. In 1971 he was the chairman of both the Maryland Wing Advisory Council and the Middle East Region Cadet Council of the Civil Air Patrol. He was also the State Cadet Ranger Training Officer, which is the ground rescue force of the Civil Air Patrol. His responsibilities in this capacity were training of other cadets, establishing ground rescue units, and teaching American Red Cross first-aid classes. During 1971, petitioner was also a Lieutenant Colonel in the Gwynn Oak Squadron of the Maryland Wing of the Civil Air Patrol. His brother, Michael Paul Miller, was the unit commander of this wing. This unit met once each week for 50 weeks and also had two staff meetings for planning purposes at the end of each year. During 1971 petitioner attended each and every one of these meetings. The activities at these meetings included instruction on aerospace subjects, current events, moral leadership, military leadership, and military drill and ceremony. Petitioner's positions with the Civil Air Patrol were all voluntary. He was paid no salary and received no income from his activities with the Civil Air Patrol. *99 Petitioner received reimbursement for certain expenses which he incurred in attending regional meetings of the Civil Air Patrol, but also incurred many expenses in connection with his volunteer work for the Civil Air Patrol for which he received no reimbursement. During the course of the year 1971, petitioner participated in training missions and at least two actual rescue or search missions. He also attended several conferences and a ranger training exercise during the course of that year. In addition to his squadron meetings he attended Wing Headquarters meetings at least once per week, held at the Baltimore and Washington International Airport. The Civil Air Patrol is a volunteer civilian auxiliary of the United States Air Force which was created in 1946 [to] provide aviation education and training especially to its senior and cadet members; to encourage and foster civil aviation in local communities and to provide an organization of private citizens with adequate facilities to assist in meeting local and national emergencies. [Act of July 1, 1946, Pub. L. 476, 79th Cong., 2d Sess., 60 Stat. 346, 36 U.S.C. sec. 202.] The Civil Air Patrol is listed *100 as an organization to which contributions are deductible under section 170 in Publication No. 78, Cumulative List, at page 149. The organization holds a group exemption whereby subordinate units of the Civil Air Patrol are included in the public charity status. In order to more ably perform his supervisory and emergency functions with the Civil Air Patrol, petitioner maintained and purchased communication equipment for his home and automobile. The Civil Air Patrol uses the two-way wireless radio extensively as a form of communication for both the transmission of emergency reports and official routine administrative information. Having the communication equipment which he purchased available was helpful to petitioner in performing his volunteer work with the Civil Air Patrol. If petitioner had not maintained such equipment the telephone would have been the only means of communication open to him except on specific missions when communications equipment was furnished by the Civil Air Patrol for use of participants in the mission. The Civil Air Patrol has frequencies assigned to it by the Federal Communications Commission for its exclusive use. The Civil Air Patrol makes frequent *101 use of the radio in the normal conduct of its affairs. The Civil Air Patrol conducts three "nets" per day on its assigned frequencies. A "net" is a regularly scheduled time on a Civil Air Patrol frequency when all personnel may come onto the designated frequency at a specific time in order to conduct official business of the Civil Air Patrol. Petitioner owned three radios that he used in connection with his Civil Air Patrol activities. Two of the radios were in his home and one was in his automobile. Petitioner had installed in each of his radios in his home crystals that allowed only frequencies of the Civil Air Patrol to be received on the set. The automobile mounted radio was not limited by an installation to receipt of only frequencies assigned to the Civil Air Patrol. Petitioner at times used this two-way radio to transmit emergency messages when he encountered situations such as automobile accidents on the highway, although such an activity was not an official Civil Air Patrol function. The radios which petitioner owned had the capability of covering the seven states in the Middle East Region of the Civil Air Patrol enabling petitioner to communicate by radio with all the *102 area that concerned his position as an officer in the Civil Air Patrol. Petitioner personally had the title to and ownership of all the communication equipment which he maintained in his home and car for use in connection with Civil Air Patrol activities. Petitioner expended the following amounts for which he was not reimbursed for the purchase of radios and radio equipment during the calendar year 1971: Amount
Item
$ 9.31
Tools to install antenna
50.00
Repayment of loan for purchase of radio
159.95
Johnson Messenger III Radio
25.00
Crystals (no designation as to type)
12.95
Speaker
11.96
Coaxial cable
194.93
Radio
75.00
Petitioner's share of cost of antenna
$539.10
Petitioner expended the following amounts for which he was not reimbursed for repairs and maintenance of his radio equipment during the year 1971: Amount
Item
$ .72
End connector for wire
10.00
Alignment to Civil Air Patrol frequency
14.47
Frequency check
20.30
Replacement of broken parts
10.00
Civil Air Patrol crystals
10.07
Alignment to Civil Air Patrol frequency
10.00
Alignment to Civil Air Patrol frequency
2.16
Radio part
2.81
Antenna hardware
$ 80.53
*103 Petitioner was required to wear a specific uniform to Civil Air Patrol meetings and other activities during 1971. He was given no allowance for the purchase and cleaning of the uniforms worn in Civil Air Patrol functions, but was granted base exchange privileges for the purchase of uniforms at Andrews Air Force Base through his membership in the Civil Air Patrol. Petitioner, at the base exchange, purchased only military uniforms of the type required to be worn by Civil Air Patrol cadets. He spent $127.22 for the purchase of such uniforms in 1971. It was necessary that the uniforms he wore when attending meetings be cleaned once each week. Petitioner spent $1.85 per week, or a total of $96.20, for cleaning his uniforms in 1971. [2]
During 1971 petitioner made the following expenditures for which he was not reimbursed in attending various conferences which he was required to attend because of his positions in the Civil Air Patrol: Amount
Item
$ 15.00
Cadet Advisory Council Meeting Registration
17.00
Civil Air Patrol summer encampment
2.00
Room charge, Andrews AFB
[3] 47.00
Lodging expense
15.00
Girlfriend's admission to Civil Air
Patrol banquet
48.50
Civil Air Patrol conference
10.40
Middle Eastern Regional Conference
48.00
Middle Eastern Regional Conference
$202.90
*104 During 1971 petitioner, in connection with his Civil Air Patrol activities, traveled in his personal automobile the miles indicated below and deducted 6 cents a mile. He also incurred expenses for tolls, for which he received no reimbursement. Amount at Miles
6" per mile
Purpose
800
$ 48.00
Travel to conference at
Ashland, Virginia
185
11.10
Travel to conference at
Richmond, Virginia
40
2.40
Travel for squadron inspection
780
46.80
Travel to weekly squadron
meetings
2,184
131.04
Travel to weekly head-
quarter's meetings
300
18.00
Travel to ranger training camp
4.05
Toll charges to Ashland,
Virginia
4,289
$261.39
Petitioner's brother and other cadet members would occasionally ride with petitioner to Civil Air Patrol meetings but petitioner was never given any gas money from these riders, nor was he reimbursed by the Civil Air Patrol because of bringing passengers. *105 During 1971 petitioner incurred and paid the following miscellaneous expenses: Amount
Item
$ 10.00
Squadron dues
19.98
Printing of Civil Air Patrol booklet
1.20
Phone calls
1.34
Binder for CAP training booklet
1.98
Postage
.48
Postage
8.00
Federal Communications Commission license
53.05
Gift for commander
11.31
Gift for senior adviser
$107.34
The FCC radio operator's license for which petitioner paid $8 is a license of a general nature allowing petitioner the right to transmit on frequencies other than those assigned for the Civil Air Patrol's exclusive use. The gifts were purchased by petitioner with his personal funds and given directly by him to the senior members of the Civil Air Patrol. Petitioner on his Federal income tax return for the calendar year 1971 reported total income of $3,552. He claimed a charitable contributions deduction of $1,460 with the explanation "Civil Air Patrol." [4]
*106 Respondent in his statutory notice of deficiency disallowed the claimed deduction with the following explanation: The mere fact that you were a member of the Civil Air Patrol does not give use to an allowable contribution deduction. It appears that the expenses you incurred were in pursuit of a hobby. Due to the disallowance of certain itemized deductions we have computed your tax by means of the tax table, because this is to your advantage. At the trial respondent conceded that any amount petitioner could show was expended by him in 1971 "for the use of" the Civil Air Patrol was properly deductible as a charitable contribution. ULTIMATE FINDINGS OF FACT 1. For the calendar year 1971 petitioner is entitled to a charitable contribution deduction in the amount of $788.12 for expenditures made "for the use of" the Civil Air Patrol, consisting of the following items: Repairs for communication equipment
$ 80.53
Uniform purchases and cleaning
223.92
Conference expenses
187.90
Automobile travel expenses
261.39
Miscellaneous
34.38
Total
$788.12
2. In computing his 1971 deduction for gasoline tax petitioner must reduce the total 20,000 miles he drove *107 in 1971 by the 4,289 miles driven for Civil Air Patrol activities for the cost of which automobile mileage he is being allowed a charitable contributions deduction. OPINION Section 170(a)[5] allows a deduction for any charitable contribution made within the taxable year and Section 170(c) defines "charitable contribution" as a contribution or gift "to or for the use of" an organization described in Section 170(c)(2). The parties have stipulated that the Civil Air Patrol is a charitable organization described in Section 170(c)(2). However, respondent contends that no deduction as a charitable contribution should be allowed to petitioner because he has failed to substantiate the items of expense comprising the deduction taken on his return as a charitable contribution. In our view there is no validity to this contention of respondent's. The evidence clearly shows that petitioner in 1971 made most of the expenditures for the items he claims as comprising the $1460 which he claims as a charitable deduction. These expenditures are supported by documentary evidence as well as petitioner's testimony. *108 This issue is factual and our findings of the expenditures made by petitioner dispose of the issue. However, the fact that petitioner made the expenditures claimed does not entitle him to a charitable deduction for he must also show that the expenditures were made "for the use of" a charitable organization. Petitioner has shown that only $788.12 of these expenditures were "for the use of" the Civil Air Patrol. *109 Petitioner contends that he should be allowed to deduct the cost of wireless communication equipment which he purchased during 1971 because such equipment was used by him exclusively for Civil Air Patrol. Respondent argues that petitioner is the owner of all the equipment he purchased and that this equipment was in his personal automobile or residence at all times. As the owner of the equipment petitioner retained full dominion and control over the items involved. Petitioner maintains that the equipment was for the exclusive use of the Civil Air Patrol and that the crystals installed in two radios prevented communications other than on those frequencies assigned to the Civil Air Patrol from being transmitted or received. There is no evidence in the record to indicate that the equipment could not be inexpensively converted to frequencies other than those assigned to the Civil Air Patrol, such as a citizen's band. A change in crystals would allow petitioner to maintain and use the equipment in any manner for which equipment of this type was suitable. The equipment was petitioner's and even though he used it in his volunteer work for the Civil Air Patrol, it was petitioner who controlled *110 use of the equipment. The equipment was not given or leased or in any way transferred to the Civil Air Patrol. Under these facts petitioner would not be entitled even to a deduction for depreciation or rental value of the equipment and certainly not entitled to a deduction for the cost of the equipment. Orr v. United States,343 F. 2d 553 (5th Cir. 1965). [6]
*111 We therefore hold that petitioner is not entitled to any portion of the claimed charitable contribution deduction for the radio equipment he purchased in 1971 and used in his volunteer services to the Civil Air Patrol. Sec. 1.170A-1(g), Income Tax Regs., [7] states that no deduction is allowed for the contribution of services, but that unreimbursed expenditures made in rendering donated services may constitute a charitable deduction. *112 In the case before us, petitioner's radios located in his home were used solely for Civil Air Patrol activities. In fact the radios were set up so that only frequencies assigned to the Civil Air Patrol could be transmitted or received under normal operating conditions. Although the radio placed in the car had available frequencies in addition to those assigned to the Civil Air Patrol, petitioner seldom used the other frequencies. Under these circumstances petitioner's out-of-pocket expenses incurred in operating this equipment were amounts paid "for the use of" the Civil Air Patrol. In effect, respondent's rulings hold expenses directly related to the use of property for a charity to be deductible as a charitable contribution. [8]
*113 The facts here show that petitioner used the communications equipment for Civil Air Patrol work during the taxable year here in issue. The facts show that the equipment repairs he incurred in 1971 were "directly attributable" to the performance of services for the Civil Air Patrol since, except on rare occasions, he used the radio equipment only for Civil Air Patrol business. We therefore hold that the amount of $80.53 expended by petitioner for repairs to his communications equipment in 1971 was "for the use of" the Civil Air Patrol and is deductible as a charitable contribution. [9]
Petitioner testified at the trial that he spent $127.22 in 1971 for military type uniforms for wear in Civil Air Patrol activities. He produced receipts *114 to substantiate this testimony. Petitioner also testified that the regulations required that he not wear these uniforms except to Civil Air Patrol related activities. Sec. 1.170A-1(g), Income Tax Regs., provides that the cost of a uniform without general utility which is required to be worn in donating services is deductible as a charitable contribution. The evidence is clear that the uniforms purchased by petitioner in 1971 are within the nature of the type of uniforms intended by the regulation to be deductible as out-of-pocket expense for the use of a charitable organization. We hold that the $127.22 spent by petitioner for uniforms in 1971 is deductible as a charitable contribution since it is an out-of-pocket expense incurred in performing donated services. For the same reason we hold the cost of the uniforms to be deductible, we hold the $96.20 cost to petitioner of cleaning the uniforms to be deductible. The evidence of the cost of cleaning the uniforms is not as clear as the evidence of the amounts expended for uniforms. However, the question is factual *115 and we have found from the evidence that in 1971 petitioner expended $96.20 for cleaning his Civil Air Patrol uniforms. Therefore, we hold that petitioner is entitled to deduct $96.20 as a charitable contribution as the cost of maintaining uniforms worn to Civil Air Patrol activities. At trial petitioner produced evidence to support $203.90 as the cost of attending Civil Air Patrol functions in various cities. Section 1.170A-1(g), Income Tax Regs., allows as a charitable deduction reasonable expenditures for meals and lodging incurred while away from home in the course of performing donated services. The record shows that petitioner attended conventions, summer camps, and meetings of the Civil Air Patrol which required him to be away from home overnight. Therefore the cost incurred of meals and lodging for which he was not reimbursed while attending these conferences is deductible under section 1.170A-1(g), Income Tax Regs. The registration fees expended to attend the conferences and camps constitute charitable contribution deductions, within the meaning of section 170, as unreimbursed expense incurred in performing donated *116 services to an organization qualifying under section 170(c). See Rev. Rul. 58-240, 1958-1 C.B. 141. Except for a $15 payment for a banquet ticket for a person, then a friend and now the wife of petitioner, to attend a Civil Air Patrol banquet, all the expenditures claimed by petitioner as the cost of attending conferences of the Civil Air Patrol are properly deductible under respondent's regulation. The $15 spent for the ticket for another person is a nondeductible personal expense within the meaning of section 262. Therefore, we hold that $187.90 is the amount properly deductible as a charitable contribution incurred by petitioner in 1971 as out-of-pocket expenses in performing donated services in attending conferences and banquets. Petitioner has deducted 6 cents per mile as the transportation expense incurred in performing Civil Air Patrol activities. Such deduction followed the provisions of Rev. Proc. 70-24, 1970-2 C.B. 505, which was applicable for the year in issue. Respondent has not taken issue with the distances testified to at trial by petitioner, the use of the 6 cents a mile provided for in the Revenue Procedure, or the additional amounts *117 deducted for toll fees. Respondent's only contention is that petitioner should not be allowed the deduction since he included the 4,289 miles traveled for the Civil Air Patrol in computing his gasoline tax deduction allowed under section 164. Section 1.161-1, Income Tax Regs., provides that: Double deductions are not permitted. Amounts deducted under one provision of the Internal Revenue Code of 1954 cannot again be deducted under any other provision thereof. We agree with respondent that petitioner is not entitled to a double deduction, but hold that his gasoline tax deduction is the deduction that should be adjusted. [10]
*118 Petitioner claimed a deduction for a charitable contribution for two items totalling $64.36, which were amounts expended by him for the purchase of gifts of appreciation given to higher ranking members of the Civil Air Patrol. These gifts were given directly by petitioner to the senior member and not through the Civil Air Patrol. Petitioner has argued that it was customary to make gifts to the senior advisors to express appreciation to them for donating their time and services to the organization. Respondent has argued that these gifts were to individuals and not to the Civil Air Patrol and therefore constitute a non-deductible personal expense to petitioner. We agree with respondent. In order for a gift to be treated as a deduction for a charitable contribution it must be a gift to an organization that qualifies under section 170(c). Here, if the gift had been to the Civil Air Patrol a different result might be required, but the gifts were merely for the benefit of individuals and not "for the use of" a qualified recipient under section 170(c). The Civil Air Patrol had no claim to *119 the gifts as the individual member was the direct beneficiary of petitioner's generosity. Such gifts are not deductible as charitable contributions. Fred Dohrmann, Jr.,18 B.T.A. 66 (1929); and Cap Andrew Tilles,38 B.T.A. 545 (1938). Petitioner's expense for squadron dues is deductible as a charitable contribution to the Civil Air Patrol. Dues paid to charitable organizations are charitable donations in nature to the extent the expenditure is not in return for rights and privileges given to a member of the organization. The basic considerations to be examined are the nature and objectives of the organization, the activities conducted by it, and the nature and privileges conferred on the members. [11] The record here shows that the only benefit offered petitioner other than training received to enable him to perform Civil Air Patrol missions, was the right to purchase items at the Base exchange at Andrews Air Force Base and this privilege was limited to the purchase of military type items such as uniforms worn in Civil Air Patrol activities. The benefits conferred on the petitioner through membership in the Civil Air Patrol were merely incidental *120 to the charitable purpose of the organization. We therefore hold the squadron dues paid by petitioner in 1971 to be deductible as a charitable contribution. Petitioner in 1971 paid $8 for a restricted radio operator's license issued by the Federal Communications Commission. This general license entitles petitioner to lawfully use the airways to transmit on wireless radio equipment on frequencies other than those assigned to the Civil Air Patrol. An expense of such nature has a dual character in that it benefits both petitioner and also improves the quality of his services rendered to the Civil Air *121 Patrol. However, petitioner has failed to show that the license was "directly attributable" to the rendition by him of services to the Civil Air Patrol. If the license were restricted to Civil Air Patrol frequencies the expense might be considered "directly attributable," to such activities, but a general license also confers a personal benefit on petitioner and therefore we hold this $8 expenditure to be a nondeductible personal expense. From the evidence, we have determined that the total charitable deduction allowable to petitioner in 1971 for expenses incurred in connection with Civil Air Patrol activities is $788.12. Petitioner is entitled to this deduction plus the deductions claimed on his return which were not challenged by respondent minus the adjustment to his claimed gasoline tax deduction which we have found should be made if use of such amount of deductions results in a lesser tax than that computed by respondent by use of the tax tables. Decision will be entered under Rule 155. $/ Footnotes
1. All references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. Petitioner computed his cleaning expense at $1.85 a week for a total expense of $160, an obvious mathematical error.↩
3. This is one-half of the total cost of food and lodging at a Civil Air Patrol conference that petitioner attended along with his brother with whom he shared a room. Petitioner computed one-half of $94 as $48, an obvious mathematical error.↩
4. Petitioner on his return attached a schedule in general showing his claimed deduction was based on the items of expenditure we have set forth in our findings. These items, prior to mathematical corrections, total $1,479.48 and after mathematical corrections $1,414.68.↩
5. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.-- There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. * * *
(c) Charitable Contribution Defined.-- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * *
(2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. * * *↩
6. Prior to the Tax Reform Act of 1969, there was no specific provision in the Code covering contributions of partial interests in property. Sec. 170(f)(3) which was added to the Code by the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, 556, provides: (3) Denial of deduction in case of certain contributions of partial interests in property.-- (A) In general.--In the case of a contribution (not made by a transfer in trust) of an interest in property which consists of less than the taxpayer's entire interest in such property, a deduction shall be allowed under this section only to the extent that the value of the interest contributed would be allowable as a deduction under this section if such interest had been transferred in trust. For purposes of this subparagraph, a contribution by a taxpayer of the right to use property shall be treated as a contribution of less than the taxpayer's entire interest in such property. (B) Exceptions.--Subparagraph (A) shall not apply to a contribution of-- (i) a remainder interest in a personal residence or farm, or (ii) an undivided portion of the taxpayer's entire interest in property. See S. Rept. No. 91-552 (1969), 1969-3 C.B. 423, 477, which states that "no deduction is to be allowed where a contribution is made of the right to use property for a period of time." Also see H. Rept. No. 91-413 (1969), 1969-3 C.B. 200, 237; Conf. Rept. No. 91-782 (1969), 1969-3 C.B. 644, 654. Under prior law a deduction was allowed for the use of property under certain circumstances. For example, in John G. Allen,57 T.C. 12 (1971), and Thriftimart, Inc.,59 T.C. 598 (1973), on appeal (9th Cir., Sept. 21, 1973), a deduction for charitable contribution was allowed for the fair rental value of property where a valid contractual arrangement for use by the charity of the property had been entered into by the parties. Whether sec. 170(f)(3) would prohibit a deduction in 1971 for the fair rental value of communications equipment which was leased or placed under the control of the Civil Air Patrol we need not decide. Petitioner retained the control of the property and under Orr v. United States343 F. 2d 553 (5th Cir. 1965) is entitled to no deduction without reference to Section 170(f)(3)↩.
7. Sec. 1.170A-1(g), Income Tax Regs.: (g) Contributions of services. No deduction is allowable under section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible. For the purposes of this paragraph, the phrase "while away from home" has the same meaning as that phrase is used for purposes of section 162↩ and the regulations thereunder.
8. Rev. Rul. 58-279, 1958-1 C.B. 145, holds that a pilot in the Civil Air Patrol who owned an aircraft, automobile, and other equipment used in performing volunteer services for this organization could deduct unreimbursed expenses that were directly attributable to the performance of those volunteer services. Only those expenses directly attributable to such use were allowed and this did not include any pro rata share of general maintenance or repairs. In Rev. Rul. 67-364, 1967-2 C.B. 120, a civilian "ham" operator was permitted to deduct unreimbursed expenses incurred in operating his wireless communications equipment as a member of a United States Army program. The ruling held that a member of this program while performing voluntary services was rendering gratuitous services "for the use of" the United States within the meaning of section 170(c)(1)↩. The ruling concluded that the taxpayer was allowed to deduct out-of-pocket expense incurred in the operation, maintenance, and repair of his radio equipment which was directly attributable to the performance of such volunteer services. No deduction was allowed for a proportionate share of the general repairs or maintenance of the equipment.
9. Respondent argues that some sales tax was involved in the $80.53 repair deduction and therefore to allow this deduction to petitioner is to allow a double deduction contrary to Section 1.161-1 Income Tax Regs. We have reviewed the items involved in these repairs. Most of the repair items constituted services. It appears that any sales tax involved is less than $1 and we consider such a small amount de minimis.↩
10. Rev. Proc. 70-24, 1970-2 C.B. 505, 506, states: "The use of this rate shall be in lieu of any amounts otherwise allowable under sections 170 and 213 of the Code by reason of the use of a taxpayer's automobile for transportation. However, the rate prescribed herein does not affect deductions for any expenses relating to the automobile which are allowable under section 163 of the Code (interest) or section 164 of the Code (taxes other than those included in the cost of gasoline)." It seems clear that under this Revenue Procedure the adjustment is contemplated in the gasoline tax deduction.↩
11. In Rev. Rul. 55-70, 1955-1 C.B. 506 the Internal Revenue Service stated its position as follows: If the rights and privileges of membership are incidental to making the organization function according to its charitable purposes, and the benefit to be derived by a member is the personal satisfaction of being of service to others and furthering the charitable cause in which the members share an interest in common, then the membership fee is considered a contribution toward the support of the organization. See also Rev. Rul. 68-432, 1968-2 C.B. 104↩.